**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BYRON BUMP,**

                                        **Plaintiff,**

          **vs.**                                        **3:13-cv-1379**
                                                          **(MAD/RFT)**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**LACHMAN, GORTON LAW FIRM**              **PETER A. GORTON, ESQ.**
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **KAREN T. CALLAHAN, ESQ.**
Office of Region General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

     Plaintiff Byron Bump commenced the present action pursuant to 42 U.S.C. §§ 405(g) and

1384(c)(3), seeking judicial review of Defendant Commissioner of Social Security ("the

Commissioner")'s final decision to deny Plaintiff's application for disability insurance benefits

("DIB") and supplemental security income ("SSI"). _See_ Dkt. No. 1.

     On April 20, 2009, Plaintiff filed an application for DIB and SSI under the Social Security

Act. _See_ Dkt. No. 9, Administrative Transcript ("T."), at 174-82. After his application was

denied, *id.* at 49-50, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 22, 2010, *id.* at 116-52. On August 18, 2010, ALJ F. Patrick Flanagan issued a decision denying the requested relief, *id.* at 51-64, which became the Commissioner's final determination upon the Appeals Council's denial of review, *id.* at 70-72.

On September 21, 2011, Plaintiff brought an action in U.S. District Court for the Northern District of New York seeking judicial review of the Commissioner's determination. *Id.* at 68-69, 80. By Order of Consent, the case was remanded pursuant to 42 U.S.C. § 405(g) to reconstruct the administrative record and to hold a *de novo* hearing. *Id.* at 82-83. Following rehearing on August 7, 2012, *id.* at 1008-36, ALJ Flanagan issued a decision dated September 21, 2012, again denying Plaintiff's requested relief, *id.* at 32-48. Plaintiff timely filed a request for review by the Appeals Council on October 4, 2012, *id.* at 28, which was denied on October 10, 2013, *id.* at 9-11, thereby making the ALJ's decision the final decision of the Commissioner.

Plaintiff commenced the present action by filing a complaint on November 6, 2013, seeking judicial review of the Commissioner's most recent determination. *See* Dkt. No. 1. Plaintiff alleges disability as a result of "severe impairments, including impairments to his back, shoulder, joints, feet, and hands and further including coronary artery disease, sleep disorder, deficits in intellection function, mental impairments, and headaches/migraines." Dkt. No. 11 at 3.

Presently before the Court are Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 11, and Defendant's cross-motion for judgment on the pleadings, *see* Dkt. No. 12.

## II. BACKGROUND[1]

---

[1] Plaintiff in this case has not set forth the relevant background information "as ordinarily done in the beginning of the brief." Dkt. No. 11 at 3. Accordingly, the Court will partially rely on the statement of facts contained in the ALJ's September 21, 2012 decision with the exception of any arguments, conclusions, or inferences made therein. *See* T. at 32-48.

Plaintiff was born on November 27, 1972, and was thirty-nine years old at the time of the second administrative hearing on August 7, 2012. *See* T. at 174, 1008. Plaintiff is married and lives with his wife and only child in an apartment owned by Plaintiff's mother in Fort Greene, New York. *See id.* at 123-24. Plaintiff did not complete his high school education, and has since enrolled in the Binghamton Adult Educational Program to obtain a GED. *See id.* at 124-25, 1032. From 2000 until 2001, Plaintiff worked full time for Indian Valley Industries at a paper recycling plant as a forklift operator. *See id.* at 125, 186. In 2002, Plaintiff began working full time at Scotsman Press as a pressman's assistant. *Id.* at 125-26, 186-88. Plaintiff contends that he was required to "change[] the paper rolls, dump [and] fill[] the inks, clean[] the in fountains off, jack[] papers, a lot of heavy, a lot of extreme heavy lifting and a lot of standing." *Id.* at 126.

On July 19, 2007, Plaintiff was taken by ambulance to Wilson Memorial Regional Medical Center in Johnson City, New York ("Wilson Memorial") after complaining of severe chest pain. *See id.* at 378. Plaintiff was discharged from the hospital the same day in a stable condition and was instructed "not to work for two days" and to "avoid stimulants (such as cigarettes . . . )." *Id.* at 379. Plaintiff ultimately stopped working and sought medical leave beginning on August 1, 2007. *See id.* at 126, 195-96.[2]

On November 7, 2007, Plaintiff was referred for and underwent a cardiac catheterization and angioplasty after continued self-reports of chest pain despite negative reports from two separate stress tests. *See id.* at 376. Plaintiff was diagnosed with 80% proximal stenosis of the left anterior descending ("LAD") coronary artery and treated with primary stenting, followed by post stent balloon dilation. *See id.* at 369. Plaintiff was discharged the following day in a stable

---

[2] Plaintiff initially alleged disability beginning on August 1, 2007. He later amended his alleged disability onset date to July 1, 2008. *See* T. at 32.

condition and was diagnosed with hypertension, hyperlipidemia, hypothyroidism, gastroesophageal reflux disease, and arthritis. *See id.*

On January 24, 2008, Plaintiff visited United Medical Associates in Binghamton, New York, again reporting chest pain and shortness of breath. *See id.* at 366-67. Notably, Plaintiff denied suffering from "headaches," as well as "leg pain, muscle weakness, or movement limitations." *Id.* at 367. Following an esophagogastroduodenoscopy ("EGD"), Dr. Bank, Plaintiff's treating physician, stated that the reported symptoms were "out of proportion to [the] endoscopic findings" and were likely attributable to Plaintiff's use of aspirin. *Id.* at 364.

Shortly thereafter, Plaintiff briefly returned to work at Scotsman Press in March of 2008 as part of its inserting departing. *See id.* at 127. Plaintiff contends that he was required to lift "bundles [of fliers] over, tie them up, then put them into a rack . . . [and] [t]hen drag the rack." *Id.* Plaintiff further contends that the rack, when full, weighed approximately 100 pounds. *Id.* Plaintiff again sought medical leave after experiencing reoccurring "chest pains" and "shortness of breath." *Id.* at 128, 210. Specifically, on March 12, 2008, Plaintiff was admitted to Wilson Memorial for "moderate" chest pain and subsequently discharged the following day to the hospital's Chest Pain Center for observation. *Id.* at 334. On March 19, 2008, Plaintiff underwent a second cardiac catheterization to alleviate a proximal stenosis of the LAD coronary artery. *See id.* at 328-29.

On July 28, 2008, Plaintiff underwent psychiatric evaluation and was diagnosed with intermittent explosive disorder. *See id.* at 496. Dr. Long, the treating physician, recommended that Plaintiff continue with anger management therapy. *Id.* Plaintiff also underwent a consultative examination, conducted by Dr. Magurno, in which Plaintiff was diagnosed with a "possible rotator cuff tear" in his right shoulder; back, knee, wrist, and ankle pain; "recurrent

chest pain;" and "[t]obacco abuse." *Id.* at 504. Dr. Magurno further opined that Plaintiff "most

likely had too many injuries to fully recover." *Id.*

In September 2008, Dr. Sonthineni conducted a neurological examination of Plaintiff, and

stated that Plaintiff suffered from"decreased sensory perception" and "vascular headaches." *Id.* at

585. In December 2008, following an MRI, Dr. Sonthineni affirmatively diagnosed Plaintiff with

migraines and obstructive sleep apnea. *See id.* at 581. Dr. Sonthineni noted at that time that

"[Plaintiff] is well oriented," "[h]as no memory impairment," and is "[n]ot in any acute distress."

*Id.* at 580. Dr. Sonthineni reaffirmed this diagnosis during a subsequent appointment with

Plaintiff in February 2009. *See id.* at 578-79.

In July 2009, Plaintiff sought a consultative rheumatology examination, complaining of

wrist, knee, shoulder, ankle, neck, and back pain. *See id.* at 722. Plaintiff attributed the joint pain

to his "20-year history of training horses where he sustained different injuries . . . fall[ing] off the

horse." *Id.* Dr. Llinas-Lux, the treating physician, noted that Plaintiff had "good range of motion

in the neck[,] . . . hips, knees, and ankles." *Id.* at 723. Dr. Llinas-Lux also noted that Plaintiff had

maximum strength in both his upper and lower extremities. *See id.*

Plaintiff underwent a second consultative psychiatric evaluation in September 2009, in

which the treating physician, Dr. Moore, diagnosed Plaintiff with impulse control disorder,

depressive disorder, and anxiety disorder. *See id.* at 600. Dr. Moore ruled out posttraumatic

stress disorder, bipolar disorder, intermittent explosive disorder, and borderline intellectual

functioning. *Id.* Dr. Moore also stated that his symptoms "could cause problems with making

appropriate work decision and maintaining a regular work schedule." *Id.* at 599.

Plaintiff also met with Dr. Magurno for a consultation, who diagnosed Plaintiff with sleep

apnea, intermittent lower back pain, joint pain, coronary artery disease, and hypertension. *See id.*

at 594. Dr. Magurno noted, however, that Plaintiff had maximum strength in his upper and lower extremities and that his joints were stable and nontender. *See id.* at 593.

According to Plaintiff's September 2009 Physical Residual Functional Capacity ("RFC") Assessment performed by a non-examining state agency medical consultant, Plaintiff had no push and/or pull limitations, could occasionally lift up to ten pounds, and could frequently lift less than ten pounds. *See id.* at 603. The Physical RFC also stated that Plaintiff could stand for at least two hours in an eight hour day, and could sit for at about six hours in an eight hour day. *See id.* In Plaintiff's Mental RFC Assessment, the agency consultant ultimately concluded that Plaintiff could "perform simple, entry level work where he would not work closely with others." *See id.* at 610-11.

In February 2010, Plaintiff met with Dr. Grier, complaining of "'[a]ll over body pain.'" *Id.* at 647. Dr. Grier opined that Plaintiff "has significant psychological disease including intermittent explosive disorder," but that "[a] gentlemen of his age with really no known diagnosis . . . is very unlikely fully disabled." *Id.* at 648. Dr. Grier further noted Plaintiff's desire to obtain disability, given that Plaintiff arrived to the appointment with a disability form, and that Plaintiff's "primary care physician does not believe that he is medically disabled and will not fill the forms out." *Id.* at 647. Dr. Grier recommended that Plaintiff follow up with him after obtaining a functional capacity evaluation ("FCE") to determine his "workability." *Id.* at 648. In May 2010, Dr. Zander, after examining Plaintiff, also concluded that "[he] did not believe [Plaintiff] was significantly disabled" and recommended that a "functional assessment" be performed by a physical therapist. *Id.* at 773. The record is silent as to whether or not Plaintiff ever scheduled or underwent an FCE or equivalent functional assessment.

In October 2010, Plaintiff sought and obtained an MRI of his lumbar spine, which indicated "posterior bulging of the disc margins" at the "L5-S1 and L4-L5 levels." *Id.* at 733. However, the interpreting physician, Dr. Joy, found "[n]o distinct evidence of disc extrusion or significant spinal canal stenosis at either level." *Id.* In March 2011, during a follow-up appointment, Lonnie Stethers, CRNP, indicated that Plaintiff "is considering disability and is enlisting my assistance. I explained to him that he is certainly not disabled from all employment." *Id.* at 739. In April 2011, Dr. Porter recommended sacroiliac ("SI") joint injection to alleviate pain in Plaintiff's lower back. *See id.* at 848. Dr. Porter's physical examination of Plaintiff also indicated normal strength in his hip, knees, ankles, and upper and lower legs. *See id.* at 847-48. In October 2011, Dr. Asgher reported that "after reviewing [an August 25, 2011] MRI report, [Plaintiff's] issues [do] not look very advanced. He states that he is physically active and fit to go to school. Medically and psychologically he is stable at this time." *Id.* at 794.

In November 2011, Plaintiff was diagnosed by Dr. Jalaluddin with lumbosacral spondylosis, lumbago, degeneration of the lumbar/lumbosacral disc, and bilateral leg numbness. *See id.* at 851. Plaintiff elected to continue with the injections to alleviate his pain. *Id.* at 852. Plaintiff met with Dr. Jalaluddin again in February 2012, claiming continued back pain but no "headaches, dizziness, vertigo, seizures, [or] memory problems." *See id.* at 856. Dr. Jalaluddin's physical examination of Plaintiff indicated that Plaintiff had maximum strength in his upper and lower extremities and that he should "continue with current treatment." *See id.* at 858.

On March 23, 2012, Plaintiff obtained a signed questionnaire from Jonathan Briggs, NP, which indicated that if Plaintiff went back to work: (1) he would require "[m]ore than one 10 minute rest period per hour;" (2) he could only sit for " less than six hours out of an eight hour day" and would need to "alternate positions between sitting and standing;" (3) he could stand

and/or walk for "at least two hours out of an eight hour day;" (4) he could lift less than ten pounds between three and eight hours per day but could not lift anything heavier than ten pounds for any period of time; and (5) he could sustain a "moderate" work pace. *Id.* at 859-61. Dr. Porter also provided a signed questionnaire on May 16, 2012, which indicated that Plaintiff "requires complete freedom to rest frequently without restriction" and has a "severe" inability to sustain work pace. *Id.* at 862-63.

To further explore his alleged chronic back pain, Plaintiff scheduled an appointment with Southern New York NeuroSurgical Group P.C. in Johnson City, New York on August 1, 2012. *See id.* at 982-84. Dr. Sethi, the treating physician, recommended that Plaintiff obtain another MRI before any treatment strategies could be discussed. *See id.* at 983. Plaintiff later contacted Comprehensive Pain Relief on November 5, 2012, self-describing the severity of his back pain as a level eight out of ten. *See id.* at 21. Dr. Kammerman, the treating physician, provided Plaintiff with an interlaminar lumbar epidural injection to relieve the discomfort in his lower back, and discussed with Plaintiff other available pain management techniques. *See id.* at 24.

## III. DISCUSSION

### A. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Rather, the Court must examine the Administrative Transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559

U.S. 962 (2010). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citations omitted).

"If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Wojciechowski v. Colvin*, 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)). In other words, this Court must afford the Commissioner's determination considerable deference, and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Sec. of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yukert*, 482 U.S. 137, 140-42 (1987), and it remains the proper approach for analyzing whether a claimant is disabled. It is firmly held that the claimant has the burden of proof as to the first four steps, and the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n.5; *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

**B.     Analysis**

*1. Severe Impairment or Combination of Impairments*

Under the second step on the five-step analysis, the ALJ must evaluate whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).[3]  An impairment or combination of impairments is "not severe"when "it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  If the claimant does not have a severe impairment or combination of impairments, he is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

According to the ALJ's September 21, 2012 Decision, Plaintiff suffered from several severe impairments, including coronary artery disease, status post successful left anterior descending angioplasty and stenting, status post arthrosporic repair of the right shoulder, obstructive sleep apnea, obesity, borderline intellectual functioning, and intermittent explosive disorder.  *See* T. at 35.  Nevertheless, Plaintiff contends that his long history of back pain should also have qualified as a severe impairment.  *See* Dkt. No. 11 at 4.  Additionally, Plaintiff further contends that the ALJ improperly gave "no weight" to Plaintiff's alleged joint pain and problems with his hands and feet as severe impairments.  *See id.* at 7.  Lastly, Plaintiff contends that the ALJ failed to properly assess Plaintiff's history of headaches, migraines, and dizziness as severe

---

[3] According to Federal Regulations, "basic work activities" include, but are not limited to: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521(b), 416.921(b).

impairments. *See id.* at 9-10. Defendant responds, arguing that the ALJ appropriately "considered the longitudinal medical evidence in the record and concluded that this evidence failed to show that these additional conditions and complains limited plaintiff's abilities to engage in basic work activities." Dkt. No. 12 at 7 n.3. The Court agrees.

### a. Back Impairment

The ALJ, during his evaluation, examined the October 2010 MRI of the lumbar spine, which indicated degenerative spondylotic disc bulging at L4-5 and L5-S1. *See* T. 37, 733. Notably, Dr. Joy, the interpreting physician, found no distinct evidence of disc extrusion or significant spinal canal stenosis. *See id.* at 733. The ALJ also examined a lumbar spine MRI from August 2011, which indicated a small disc herniation at L4-5 and disc bulge at L5-S1. *See id.* at 37. However, Dr. Asgher reviewed that MRI and concluded that Plaintiff's medical issues did not appear to be "very advanced." *Id.* at 38, 794. An EMG from January 2012, also examined by the ALJ, was "suggestive of left lower lumber root irritation" but did not suggest "active lumber radiculopathies." *See id.* at 37, 856. The following month, Dr. Jalaluddin referred Plaintiff to a pain clinic rather than recommending Plaintiff undergo spinal surgery. *See id.* at 37, 858.

Despite the ALJ's analysis of the above medical records, Plaintiff relies on consultative examination notes that predate the MRI reports relied upon by the ALJ. *See* Dkt. No. 11 at 4. Although Dr. Magurno opined in 2008 that Plaintiff likely could never recover from his injuries, the later MRI reports and medical testimony related thereto, which were discussed by the ALJ, provide a more recent picture of Plaintiff's physical condition. As the ALJ noted, "the medical evidence is largely negative for neurological (sensation, reflex and strength) deficits of the lower extremities and is also negative for gait abnormalities." T. at 37.

Plaintiff nevertheless contends that the questionnaires completed by Dr. Porter and Mr. Briggs, NP, also support a finding of severe back impairment. *See* Dkt. No. 11 at 6. The ALJ evaluated and discussed Dr. Porter's report, which stated that Plaintiff had "severe" limitations regarding the ability to sustain work pace. *See* T. at 40, 863. The ALJ noted, however, that Dr. Porter's physical examination found normal strength, normal upper and lower extremity examinations, a normal gait, and normal leg raising. *See id.* at 40, 847-48. As for Mr. Briggs' opinion that Plaintiff had "moderate" limitations to sustain work pace, the ALJ rightfully determined that such rating would not wholly preclude Plaintiff's ability to work, especially as it relates to basic work activities. *See id.* at 40, 860.

Despite a finding of no severe back impairment, the ALJ further evaluated and analyzed during his RFC determination the very records Plaintiff relies upon herein. Specifically, the ALJ discussed Mr. Briggs' opinion and Dr. Porter's opinion, giving them little weight as "not consistent with the clinical findings of record" and Plaintiff's activities of daily living. *Id.* at 44. Moreover, the ALJ discussed Dr. Magurno's assessments of Plaintiff's alleged back pain, finding that such assessments were "improperly influenced by the claimant's complaints as opposed to his objective medical history[] and [Dr. Magurno's] findings, which during both examinations were relatively benign." *Id.* at 45. Therefore, the Court finds that the correct legal standards were applied, and that the ALJ's finding of no severe back impairment is supported by substantial evidence in the record.

Alternatively, even if the ALJ had committed error at this step, Plaintiff's claim that such error was prejudicial and warranted remand is unfounded. Since the ALJ carefully reviewed and evaluated all the medical evidence in the record pertaining to Plaintiff's alleged back pain during multiple steps of the analysis, including those reports raised by Plaintiff in his present motion, any

error at step two would be non-prejudicial. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the claimant's impairments during subsequent steps); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (noting in dicta that remand was not warranted where the ALJ found the plaintiff's disc herniation non-severe but identified other severe impairments so the claim proceeded through the sequential evaluation and all symptoms were considered).

### b. Joint Paint/Hands/Feet

Plaintiff contends that the ALJ committed "legal error" in discounting Plaintiff's alleged joint pain and numbness in his hands and feet as non-severe impairments. *See* Dkt. No. 11 at 9. Specifically, Plaintiff argues that such finding is not supported by substantial evidence, and that the ALJ improperly required there to be a "definitive diagnosis." *Id.* It has been held by at least one court in this circuit that "a claimant is not required to bring forward evidence of the cause of his disability *or to provide a specific diagnosis*." *Weiner v. Apfel*, No. 98-CV-182 (JG), 1998 U.S. Dist. LEXIS 21424, at *40 (E.D.N.Y. Dec. 30, 1998) (emphasis added). However, it is well-established that a claimant bears the burden of proof that an impairment is severe within the meaning of 20 C.F.R. §§ 404.1560(c), 416.920(c). *See Cosnyka v. Colvin*, 576 F. App'x 43, 45 (2d Cir. 2014); *Lohnas v. Astrue*, 510 F. App'x 13, 14 (2d Cir. 2013); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

It is true that in reaching his final determination that Plaintiff's alleged joint pain and numbness and tingling in the hands and feet were non-severe impairments, the ALJ stated that "a review of the medical record established that none of [Plaintiff's] complaints related to multiple joint pain and parasthesia in his upper and lower extremities have resulted in a *definitive diagnosis*." T. at 37 (emphasis added). Nevertheless, Plaintiff's contention regarding this phase is

13

overstated. Despite the ALJ's use of the phrase "definitive diagnosis," his ultimate finding of non-severe impairment is supported by substantial medical evidence in the record.

Specifically, the ALJ reviewed the clinical reports and determined that they were "somewhat inconsistent in that some exams have found sensory deficits of the upper extremities, while other examinations show normal sensation of the upper extremities." *Id.* at 36. For example, the ALJ examined Dr. Jalaluddin's clinical notes from November 2011, which stated that Plaintiff had full strength in his upper and lower extremities. *See id.* at 36, 851. Additionally, the ALJ reviewed x-rays, a CT scan, and a MRI scan of Plaintiff's left shoulder, all of which were negative. *See id.* at 36, 683-84, 650. Furthermore, the ALJ looked at an EMG from March 2011, which indicated normal readings for Plaintiff's right upper extremity and only a "very mild degree" of left side carpal tunnel. *See id.* at 36, 726-27. No treatment was recommended. *See id.* at 739.

Additionally, Plaintiff relies on *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003), for the proposition that fibromyalgic pain qualifies as a medically determinable condition that should have supported a finding of a severe impairment related to Plaintiff's alleged joint pain, tingling, and numbness. *See* Dkt. No. 11 at 9. However, the Second Circuit has clarified the *Green-Younger* decision, stating that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008). While Plaintiff correctly identifies Dr. Grier's opinion that Plaintiff suffers from "truly fibromyalgic pain," T. at 648, such opinion fails to provide any limitations or expand upon the severity of such condition to warrant a finding of severe impairment in and of itself. Additionally, the ALJ noted in his RFC determination Dr. Grier's ultimate conclusion that Plaintiff is "very unlikely fully disabled." *See id.* at 44, 648. Therefore,

the Court finds that the correct legal standards were applied, and that the ALJ's finding of no severe impairment related to the alleged joint pain, numbness, and tingling of the hands and feet is supported by substantial evidence in the record.

Alternatively, even if the ALJ had committed error at this step, the Court finds that the ALJ carefully reviewed and evaluated all the medical evidence in the record pertaining to Plaintiff's alleged joint pain, numbness, and tingling of the hands and feet in his RFC analysis. *See id.* at 42. Specifically, the ALJ noted the "lack of evidence showing problems with [Plaintiff's] knees, left shoulder, left elbow and neck, the benign rheumatological workup," as well as the "evidence showing only 'very mild' left carpal tunnel and no carpal tunnel syndrome on the right." *Id.* Moreover, the ALJ took explicit notice of the fact that Plaintiff's neurologist did not prescribe treatment for his "very mild" case of left carpal tunnel syndrome. *Id.* Accordingly, because the ALJ considered these conditions during the RFC determination, any error at step two in finding the alleged conditions to be non-severe is non-prejudicial. *See Reices-Colon*, 523 F. App'x at 798; *Stanton*, 370 F. App'x at 233 n.1.

### c. Headaches/Migraines/Dizziness

Plaintiff further contends that the ALJ should have found Plaintiff's alleged headaches, migraines, and dizziness severe impairments. *See* Dkt. No. 11 at 10. Plaintiff directs the Court's attention to his "lengthy history of headaches that are increasing in intensity." *Id.* Neither the ALJ nor Defendant refutes Plaintiff's complaints of migraine headaches and dizziness. *See* T. at 38; Dkt. No. 12 at 11. Defendant argues, however, as the ALJ correctly noted, that "[Plaintiff's] symptoms are controlled with proper usage of medication." T. at 38. Moreover, Plaintiff's reliance on an MRI finding of an arachnoid cyst is unpersuasive as the medical record indicates

that the arachnoid cyst was "congenital in nature" and thus "unrelated" to his headaches. *See id.* at 38, 661, 693.

The ALJ also thoroughly examined the evidence of record relating to Plaintiff's alleged dizziness and determined Plaintiff had not shown a related severe impairment. *See id.* at 35-36. The ALJ noted that upon both occasions that Plaintiff sought treatment for syncope, his emergency room test results revealed no abnormalities. *See id.* at 35, 898, 960-61. The ALJ also noted that Plaintiff's allegations concerning his dizziness were inconsistent with his activities of daily living, including driving a car, attending a GED program, and providing care for his son. *See id.* at 36. Therefore, the Court finds that the correct legal standards were applied, and that the ALJ's finding of no severe impairment related to the alleged headaches, migraines, and dizziness is supported by substantial evidence in the record.

Alternatively, even if the ALJ had committed error at this step, the Court finds that the ALJ carefully reviewed and evaluated all the medical evidence in the record pertaining to Plaintiff's alleged headaches, migraines, and dizziness at step four of his analysis. *See id.* at 43. Specifically, the ALJ stated that "the evidence notes that Topamax relieves [Plaintiff's] headaches" when taken properly. *Id.* Moreover, the ALJ took explicit notice of the fact that Plaintiff has not been compliant with his primary care provider's recommendation that Plaintiff take Topamax twice a day daily in order to adequately combat his headaches. *Id.* Accordingly, because the ALJ considered these conditions during the RFC determination, any error at step two in finding the alleged conditions to be non-severe is non-prejudicial. *See Reices-Colon*, 523 F. App'x at 798; *Stanton*, 370 F. App'x at 233 n.1.

### 2. Residual Functional Capacity

Plaintiff further argues that the ALJ's RFC determination "is not supported by substantial evidence and is the product of legal error." Dkt. No. 11 at 10. Plaintiff's argument focuses on the ALJ's findings regarding both Plaintiff's physical and mental limitations.

### a. Physical Limitations

According to Plaintiff, the ALJ's finding that Plaintiff can lift or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours per day, sit for six hours per day, and frequently use his right arm for overhead reaching "is contrary to the medical evidence . . . and is not otherwise supported by substantial evidence." *Id.* at 11. Moreover, Plaintiff contends that more weight should have been given to Dr. Porter's medical opinion that Plaintiff's lumbar radicular pain caused "severe" disruption in Plaintiff's ability to concentrate and sustain work pace. *Id.* at 12. Defendant argues that "the ALJ appropriately gave 'no weight' to Dr. Porter's . . . opinion." Dkt. No. 12 at 13.

"Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence." *Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009) (other citation omitted). The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643-44 (2d Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the

frequency of the examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" (quotation omitted)); *Hudson v. Colvin*, No. 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence."), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). "[F]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (citations omitted).

In the present case, the ALJ appropriately discredited the opinion of Dr. Porter because it was "not consistent with the clerical findings of record, the claimant's activities of daily living, . . . and the claimant's report of applying for 'many job[s]' since the . . . alleged onset date." T. at 44. Notably, the ALJ highlighted the fact that Dr. Porter had earlier reported "normal strength, . . . normal upper and lower extremity examinations, a normal gait and normal straight leg raising"

during an April 1, 2011 examination. *Id.* at 40. These findings directly contradicted the "severe" limitation assessment completed by Dr. Porter, which Dr. Porter indicated reflected the Plaintiff's condition as of April 4, 2011, shortly after examination. *See id.* at 862. Accordingly, the Court finds that the ALJ properly evaluated Dr. Porter's medical assessment. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in [the] case record.*" (emphasis added)).

Plaintiff also contends that more weight should have been given to Dr. Magurno's objective assessment regarding Plaintiff's range of motion limitations. *See* Dkt. No. 11 at 11. The ALJ, in reviewing Dr. Magurno's full medical record, found that her assessments were "improperly influenced by the claimant's complaints as opposed to his objective medical history[] and her findings, which during both examinations were relatively benign." T. at 45. The ALJ specifically noted that Dr. Magurno's most resent assessment of Plaintiff indicated "no acute distress, gait was normal, range of motion in his back was mildly limited, the seated straight leg raise test was negative bilaterally, deep tendon reflexes were equal in both upper and lower extremities, and no motor deficits were noted." *Id.* Plaintiff cites *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, *10 (N.D.N.Y. Feb. 13, 2014), which states specifically that "Dr. Magurno is deemed an expert in the field of Social Security disability evaluation." *See* Dkt. No. 11 at 17. However, Plaintiff omits the reference by U.S. Magistrate Judge Hine clarifying this statement. Dr. Magurno is deemed "an expert" based upon her medical occupation. *See Mauzy*, 2014 WL 582246 at *10 n.15. Furthermore, the ALJ did not dispute that Dr. Magurno is an expert and is generally qualified to evaluate functional limitations. Rather, the ALJ found that

two specific assessments by Dr. Magurno were contradicted by other medical evidence in the record and Dr. Magurno's own objective findings. Accordingly, the Court finds that the ALJ properly evaluated Dr. Magurno's medical assessment based upon substantial evidence in the record.

Additionally, Plaintiff incorrectly argues that more weight should have been given to Mr. Briggs' medical assessment. *See* Dkt. No. 11 at 15. The ALJ again correctly notes that Briggs' opinion "is not consistent with the clinical findings of record and the claimant's activities of daily living." T. at 44. More precisely, the ALJ took notice of the fact that Mr. Briggs' medical assessment contained inaccurate factual data. Namely, Mr. Briggs' specification of the incorrect number of herniated discs. *See id.* Plaintiff attempts to argue that "bulging" and herniated" are interchangeable terminology. *See* Dkt. No. 11 at 16 n.2. The Court is not persuaded. Disc herniation and disc bulging are mutually exclusive medical conditions. *See, e.g.*, *Robinson v. United State*, 330 F. Supp. 2d 261, 277 (W.D.N.Y. 2004) (distinguishing between disc herniation at the T7-8 level and disc bulging at the T8-9 level). Thus, the ALJ is wholly within his purview to weigh the credibility of Mr. Briggs' medical knowledge and understanding of the distinction between those two conditions. Accordingly, the Court finds that the ALJ properly evaluated Mr. Briggs' medical assessment based upon substantial evidence in the record.

### b. Mental and Intellectual Limitations

Additionally, Plaintiff argues that the ALJ further erred with respect to his evaluation and RFC determination of Plaintiff's mental and intellectual limitations. *See* Dkt. No. 11 at 19. Plaintiff draws the Court's attention to Plaintiff's "history of anxiety-related problems[,] . . . [and] depression." *Id.* To further his position, Plaintiff also refers the Court to the consultative

psychiatric evaluations performed by Dr. Long in 2008 and that performed by Dr. Moore in 2009. *See id.*; *see also* T. at 495-96, 598-99. The ALJ reviewed the reports from both physicians, finding that their final assessments were based "significantly on the claimant's subjective complaints." *Id.* at 46. The ALJ further found that Dr. Long's and Dr. Moore's assessments were not supported by their objective findings, which were largely normal. *See id.* The ALJ also noted that other objective evidence of report demonstrated that Plaintiff "has been able to respond appropriately in social settings" and has been described as "pleasant and cooperative." *Id.*, *see also id.* at 495-96, 583, 598. The ALJ thus allocated limited evidentiary weight to the assessments.

In his determination as to Plaintiff's mental RFC, the ALJ gave significant weight to the assessment of Dr. Duffy, who examined Plaintiff and concluded that Plaintiff had no more than moderate limitations in mental functioning. *Id.* at 45, 976. Plaintiff takes issue with the ALJ's statement that Dr. Duffy reported that Plaintiff's cognitive problems "are not significant enough to interfere with his daily functioning," *id.* at 45, because Dr. Duffy's exact words were "*it is not clear that* [Plaintiff's cognitive problems] are significant enough to interfere with [Plaintiff]'s ability to function on a daily basis," *id.* at 976-77 (emphasis added). Although the ALJ's paraphrasing may overstate Dr. Duffy's conclusion, Dr. Duffy's assessment nonetheless supports the ALJ's RFC determination.

In addition, the ALJ relied on the Mental RFC Assessments of Dr. Inman-Dundon, who found that Plaintiff has no more than moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation, and Dr. Noble, who opined that Plaintiff could "perform simple, entry level work where he would not work closely with others." *See id.* at 46, 514-16, 611. The Court therefore finds that there is substantial

evidence in the record to support the ALJ's evaluation and RFC determination as to Plaintiff's non-exertional limitations.

### 3. Disability Determination

Lastly, Plaintiff contends that "remand is warranted for vocational testimony concerning the effects of Plaintiff's severe non-exertional impairments . . . on the available job base." Dkt. No. 11 at 22.  Defendant correct responds, however, that "the ALJ considered [P]laintiff's age . . ., limited education and ability to communicate in English, work experience, and residual functional capacity." Dkt. No. 12 at 22.  "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  Rather, the Commissioner must consult a vocational expert "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations–so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.*  The ALJ properly determined that Plaintiff's non-exertional limitations had "little or no effect on the occupational base of unskilled light work." T. at 47.  The ALJ's application of Medical-Vocational Rule 202.17, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, was therefore appropriate.  Accordingly, the ALJ's determinations that work exists in significant numbers in the national economy that Plaintiff can perform, and thus that Plaintiff is not disabled as defined in the Social Security Act, are supported by substantial evidence.


**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2015
        Albany, New York

Mae A. D'Agostino
U.S. District Judge